IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

* * * * * * *

UNITED STATES OF AMERICA,                    CR 02-09-H-CCL
                                             CV 06-02-H-CCL
          Plaintiff,

                                                  ORDER
-v-

WILLIAM THERON HEAL,

          Defendant.

* * * * * * *

     Before the court is Defendant William Heal's Motion Pursuant
to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by
a Person in Federal Custody.  Under the rules of procedure
applicable to motions for correction of sentence, Defendant's
motion is first given preliminary consideration by the Court.
Rule 4, Section 2255 Proceedings.  Rule 4(b).

     Defendant Heal ("Heal") files his *pro se* § 2255 motion to
attack his 78-month sentence, which he is serving following
conviction by a jury on the charge of being a felon-in-possession

of a firearm, in violation of 18 U.S.C. § 921(g)(1).  Heal is
currently in federal custody, and the instant § 2255 motion is
the first such motion filed by him.  Heal was sentenced on
March 18, 2004.  His conviction and sentence was affirmed on
appeal and finalized for our purposes in January 2006.  *See*
*United States v. Heal*, 115 Fed.Appx. 374 (9th Cir. 2004)
(unpublished), *as amended on denial of reh'g* (July 13, 2005),
*cert. denied*, 126 S.Ct. 1098 (Jan. 9, 2006).  Heal filed his
§ 2255 motion on January 23, 2006.

<u>§ 2255 Claims</u>

Most of the instant claims assert ineffective assistance of
trial counsel.  In reviewing these claims, the Court has relied
in part on the testimony of Heal and his trial counsel at a 2004
hearing before this Court.  On April 27, 2004, the Court held an
evidentiary hearing on Defendant Heal's "Motion to Relieve
Defense Council [sic] and Grant New Trial Due to Ineffective
Assistance of Council [sic]," which motion Heal had filed *pro se*
at the conclusion of his sentencing hearing on March 18, 2004.
At the April 2004 hearing, Defendant Heal was represented by new

2

counsel, Wendy Holton, who also subsequently represented Heal on direct appeal.  Both Heal and his former trial counsel, Michael Donahoe, testified at the 2004 evidentiary hearing.

In examining claims of ineffective assistance of counsel, this Court applies the tests well-established in federal law.

First, the defendant must show that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defendant.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  *Id.* at 688.  A Court must "indulge a strong presumption" that counsel's conduct falls within the range of competence.  *Id*. at 690.  It is also movant's burden to establish prejudice: "A defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* at 694.  This evaluation must be based on the totality of the evidence before the jury, recognizing the probability of a different outcome is less likely in a case "with overwhelming record support."  *Id.* at 695-96.  A court may consider prejudice before determining whether counsel failed to act effectively. *Id.* at 697.

I.  <u>Ground One.</u>  Defendant asserts that he was denied counsel in violation of the Sixth Amendment right to counsel during a "critical stage" of the prosecution.  Defendant claims he was denied counsel from his arraignment until one day before his plea deadline.  Defendant cites *United States v. Cronic*, 466 U.S. 648 (1984), for the proposition that he need not show prejudice from trial counsel's absence during a critical stage to establish a Sixth Amendment violation.  "Counsel was completely absent during the pretrial period [and that] constitutes the complete or constructive denial of counsel which the defendant was entitled under the Sixth Amendment."  2255 Motion at 4, Paragraph A.

4

This claim is without merit because the period between arraignment and plea deadline is not a critical stage in the prosecution.  A "critical stage" in the prosecution, during which defendant is entitled to representation by counsel under the Sixth Amendment, is a "trial-like confrontation, in which potential substantial prejudice to the defendant's rights inheres and which counsel may help avoid that prejudice."  *Beaty v. Stewart*, 303 F.3d 975, 991-92 (9th Cir. 2002 (internal citations, quotation marks, and alterations omitted).  "Critical stages include, for example, post indictment police lineups, ... arraignments, ... and sentencings."  *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003) (internal citations omitted).  A critical stage is marked by its adversarial nature, along with the possibility of prejudice to a defendant due to the absence of counsel.  *Id.*  The period between arraignment and plea deadline, even though Heal was incarcerated, was not a critical stage.

Looking beyond the law to the facts relating to this claim, the Court also finds the claim without merit because the facts are not as alleged by Heal.  This Court held an evidentiary

hearing on April 27, 2004, at which Heal's trial attorney, Michael Donahoe, appeared and testified in detail regarding his representation of Defendant Heal.  The hearing related to Defendant's motion for new trial, which was based on many of the same allegations of ineffective assistance of trial counsel that are posed in the instant 2255 Motion.

Donahoe testified that he talked to Defendant on the telephone at the jail in Great Falls on several occasions during the pretrial period.  Hrng. Tr. 9:22-10:24.  Donahoe talked to Heal the day that he received the trial schedule.  Donahoe talked to Heal again one week later to discourage Heal from demanding that Donahoe file a motion for release pending trial.  (Heal had been in fugitive status for 18 months and was only brought back to Montana after he was arrested in Oregon.)  Donahoe interviewed Heal's girlfriend and met with Heal himself before the plea agreement deadline.  Hrng. Tr. 11:21-22; 12:6-9.  Donahoe's investigator visited Heal in the Great Falls jail once during the pretrial period.  Hrng. Tr. 45:7-15.  After the final decision was made to go to trial, Donahoe visited Heal in the Helena jail

and spent approximately three hours with him prior to trial. Hrng. Tr. 40:8-21.  Of course, all of these visits and telephone calls were in addition to Donahoe's other pre-trial preparation in the case.  Hrng. Tr. 11:17-23.

This Court has previously found Donahoe's testimony as to his pre-trial preparation to be credible.  *See* Order dated April 28, 2004, at 7 (Docket #44).  Donahoe's time sheets showed that he spent approximately 53.3 hours on the case (including the two-day jury trial), and his investigator's time sheets indicate that she spent approximately 22.3 hours on the case.  *See* Declaration of Michael Donahoe, Exhibit C (Timesheets) (Docket #37).  The Court accepts the testimony of Donahoe and the time-sheet evidence as factual support for Donahoe's assertion that he prepared diligently for trial after having ascertained that Heal wanted to go to trial.

This Court finds that Defendant's bald allegation that he was left defenseless without an attorney in violation of the Sixth Amendment during the critical pre-trial stage is simply not supported by the facts of this case.  Defendant was ably

7

represented by an experienced full-time federal defender who
devoted substantial time to the case during the pre-trial phase.
Defendant's Ground One claim is without merit.

   II.  Ground Two.  Heal alleges ineffective assistance of
counsel shown by multiple claims of deficiency resulting in
cumulative prejudice.

   A.  Heal asserts that Donahoe failed to consult with Heal
regarding the pretrial motions deadline.  However, testimony at
hearing on Heal's motion for new trial showed that Donahoe
consulted with Heal several times by telephone during the pre-
trial phase, and met with him several times before trial.
See supra Section I.  Heal has failed to show that Donahoe failed
to file any appropriate motion.  In some cases there are no
motions to file, and this appears to have been one of those
cases.  Therefore, this claim of ineffective assistance of
counsel fails.

   B.  Heal asserts that Donahoe failed to give the government
a letter demanding discovery.  This alleged deficiency fails
because the government provided all of its discovery to defense

8

counsel at the beginning of the case, in keeping with its open-
file policy.  Therefore, defense counsel had no reason to demand
discovery because defense counsel was provided all discovery
shortly after Heal was arraigned.

Furthermore, the Court specifically wishes to lay to rest
Heal's assertion that defense counsel's performance was deficient
because Donahoe failed to discover the identity of the anonymous
caller.  The anonymous caller telephoned Cathy Gordon, the state
probation officer, to give her a tip that Heal was in possession
of firearms.

First, Heal was not legally entitled to knowledge of the
identity of the tipster because that information was irrelevant
to the elements of the charged offense or to any defense to the
charge of felon-in-possession.  Second, it is highly unlikely
that (absent a compelling legal reason) state parole officer
Cathy Gordon would have divulged that information to defense
counsel had he asked for it.  Who turned Heal in to his parole
officer was never the issue in this case (except perhaps in
Heal's mind).  The issue has always been whether Heal committed

9

the charged offense.

At trial, state parole officer Cathy Gordon testified that on March 1, 2002, she received an anonymous tip that Heal was in possession of firearms, giving her reasonable suspicion on March 2, 2002, to conduct a search of Heal's residence where she found firearms in Heal's bedroom closet.  Trial Tr. 71:2-3 (hereinafter "Tr.").  On cross-examination, defense counsel asked whether Juanette ("Jo") Bankson, Heal's live-in girlfriend, was the "anonymous" tipster, and Cathy Gordon firmly denied that the tipster was Bankson.  Tr. 89:23-25, 90:1-6.  Upon further questioning, Cathy Gordon testified that the anonymous tipster was a counselor.  Tr: 90:7-14.  Upon further questioning on redirect, Cathy Gordon testified that she had identified the anonymous tipster as a school counselor named "Jeannie".  Tr. 91:1-4.

Clearly, the evidence at trial showed that the Montana parole officer, Cathy Gordon, was reluctant to divulge the identity of the anonymous caller in order to protect both the identity of the school counselor and also to protect the young

child residing in the home, who had apparently shared his
concerns about his mother's live-in boyfriend with his elementary
school counselor.  Even if Donahoe had asked Cathy Gordon
directly who was the anonymous tipster, it is highly unlikely
that Gordon would have told him.  It was not until Gordon was
testifying under oath, responding to direct and repeated
questions, that Gordon divulged the fact that it was a school
counselor who had telephoned her with the tip, and even then
Gordon did not offer the last name of the school counselor.

Heal also asserts that Donahoe ought to have filed a motion
to suppress the evidence obtained by the search.  In this case,
it is significant that defendant was on parole when his parole
officer received a tip indicating that the defendant was breaking
the law and the conditions of his parole.  *See Samson v.
California*, ___ U.S. ___, 126 S.Ct. 2193, 2200 (June 19, 2006)
("[T]his Court has repeatedly acknowledged that a State's
interests in reducing recidivism and thereby promoting
reintegration and positive citizenship among probationers and
parolees warrant privacy intrusions that would not otherwise be

tolerated under the Fourth Amendment."). Heal was under a search condition attached to his parole.[1] The telephone tipster provided the parole officer with reasonable suspicion, which was all that was required to conduct a search of a parolee's residence. *See United States v. Knights*, 534 U.S. 112, 121 (2001) ("no more than reasonable suspicion of a probation violation is required to conduct a search of a probationer's residence.").

Although defense counsel apparently suspected that the anonymous tipster was actually Heal's girlfriend, defense counsel discovered during trial that the tipster was actually an elementary school counselor, who is just the sort of citizen-informant who is presumed to be reliable. *See United States v. Angulo-Lopez*, 791 F.2d 1394, 1397 (9th Cir. 1986). In any event,

---

[1] Defendant's state parole conditions included this search condition: "g.  Search: Upon reasonable cause, the defendant shall submit to searches of his person, vehicle, personal effects and residence by defendant's supervising officer, at any time, without a warrant.  The defendant's supervising officer may utilize law enforcement personnel in effecting a search." Declaration of Michael Donahoe, Exhibit A, at 3 (Docket #37).

had defense counsel filed a motion to suppress the fruits of the search, that motion would have failed because the elementary school counselor did give the parole officer reasonable suspicion to conduct the search.  Thus, Heal fails the prejudice prong of any ineffective assistance claim he might assert based on Donahoe's failure to file a motion to suppress evidence obtained by the search for alleged lack of reasonable suspicion to conduct the search.  Such a motion would have failed.

Defendant Heal makes another argument that had he only known who the "anonymous" tipster really was—a child who talked to a school counselor–Heal would have "taken his medicine" and pled guilty in order to avoid the unhappy prospect of the government putting either the child or the counselor on the stand during the trial.  (Notwithstanding the fact that neither the counselor nor the child testified at Heal's trial and were obviously not needed by the government to prove its case.)  Heal concludes that had he only known the identity of the tipster, he would today be serving a lighter sentence because he would have pled guilty and received an acceptance-of-responsibility reduction in his guidelines

calculation.  This is perhaps a comforting version of what might have been.

However, the evidence at trial showed that Heal had no such concern about the well-being of this child living in his residence when he got drunk and beat the child's mother, so it is difficult to believe that Heal would have plead guilty for the sake of this child.  Heal's fantasy about how his life would have been different had he only known the identity of the anonymous tipster pre-trial is just that, a fantasy.  The Court is not persuaded that the information would have made any difference in Heal's decision to go to trial.  This alleged deficient investigation by defense counsel fails to support a claim of ineffective assistance of counsel.

C.  Heal asserts that Donahoe failed to investigate the case and prepare for trial adequately.  Donahoe testified that he prepared for this case like any other case, and he had the assistance of an experienced investigator to help him prepare for trial.  There is no rule that counsel must meet with an incarcerated defendant _every_ week before trial.  Donahoe met with

14

Heal before trial and spoke with him on the phone; Donahoe's investigator worked the case to prepare it for trial.  Heal fails to show any error or omission by defense counsel that, corrected, would have made a difference in the outcome of the case.  Given these facts, the deficiency alleged fails to support a claim of ineffective assistance of counsel.

Heal asserts that defense counsel failed to interview Ron Cronin, who could have corroborated his story that he had been kicked out of the house prior to the search.  However, Heal acknowledges that Donahoe's investigator looked for but could not find Ron Cronin.  *See* Attachment to 2255, at 4.  In addition, it is apparent that Ron Cronin could not provide a complete alibi for Heal.

Heal asserts that Ron Cronin would have been able to testify that Heal was kicked out of the house more than once, meaning, obviously, that Heal returned to the house and continued to reside there after being kicked out on multiple occasions.  Given that Heal testified that he saw his firearms in his bedroom closet when he was gathering up his things to move out, Tr.

15

116:20-117:4, Cronin's testimony would still leave open the question whether Heal later returned to the residence to live and also would have left open the ultimate question whether Heal either actually possessed the firearms or intended to control the firearms when both he and his firearms were in the house at the same time.  Essentially the testimony of Ron Cronin would have left the jury with the same questions that they had without his testimony.  Therefore, this alleged failure to investigate does not show either deficient performance or prejudice, and thus it fails to support a claim of ineffective assistance of counsel.

D.  Heal asserts that Donahoe failed to meet with Heal in person until the day before the plea deadline.  As discussed above, there is no standard number of face-to-face or telephone visits required between defense counsel and a criminal defendant. Donahoe talked with Heal on the phone and met with him in person several times before trial.  Although Heal did not have much time to consider the government's plea agreement, the testimony at hearing showed that from the beginning of the case Heal was not interested in a plea deal and did not think that he had done

anything wrong.  Hrng. Tr. 13:24-14:4 ("Heal was in a mindset of
not wanting to plead guilty.  He was consistently telling me he
had felt he had done nothing wrong.  Ethically I'm bound by those
kinds of moods on behalf of defendants.  I wasn't going to push
him into something he didn't want to do.").  The allegation that
Donahoe failed to meet in-person with Heal until one day before
the plea deadline fails to support a claim of ineffective
assistance of counsel.

　　　E.  Heal asserts that Donahoe failed to meet with Heal
between the decision to go to trial and the trial itself.  This
assertion is contradicted by Donahoe's testimony that he met with
Heal for three hours to prepare for trial.  Hrng. Tr. 40:8-21.
In any event, effective assistance of counsel cannot be parsed by
meeting hour requirements at arbitrary intervals.  This Court
observed the trial and thought it was well-tried by counsel for
both sides.  *See* Order dated April 28, 2004, at 7 ("I thought
that Donahoe did a fine job representing Heal at trial.").  I am
left with the definite impression that Heal was convicted because
the evidence showed that he was guilty, not because of any error

17

or omission of defense counsel.  The alleged failure of defense counsel to meet with Heal between the decision to go to trial and the trial itself fails to support a claim of ineffective assistance of counsel.

F.  Heal asserts that Donahoe failed to conduct proper jury voir dire and waived Heal's right to jury voir dire without consulting with the defendant or obtaining defendant's permission to waive this right.  Heal is mistaken in thinking that Donahoe waived the right to ask questions during voir dire in my Court. I do not permit counsel to ask questions during voir dire.  I do allow counsel to submit proposed questions that I might ask in addition to those questions I ask during voir dire; sometimes counsel have additional questions, and sometimes they do not. Sometimes I ask counsel's proposed additional questions, and sometimes I do not when I believe that the questions are not appropriate.  I do not see any ineffective assistance in a defense counsel declining to pose additional questions after the Court has already covered a broad range of topics and issues with the venire panel.  This alleged deficiency fails to support a

18

claim of ineffective assistance of counsel.

G.  Heal asserts that Donahoe failed to explain the jury selection process and to include Heal in the decisions of whom to strike from the jury pool.  Notably, Heal does not claim that he disagreed with any strike or challenge made or omitted during the jury selection process; Heal merely contends that Donahoe did not invite him to participate in or educate him regarding the jury selection process.

Donahoe testified that he did not necessarily consult Heal as to each and every juror challenge or strike; Donahoe stated that he was typically open to passing notes with clients during trial or having quiet conversations.  Hrng. Tr. 32:1-8.  The Court found Donahoe's testimony to be credible and could not believe Heal's testimony where it differed from Donahoe's.  *See* Order dated April 28, 2004, at 7 ("I cannot believe Heal on the points of difference with Donahoe.").  Even if a defense counsel did not consult a defendant at all during the jury selection process, this fact on its own would not support an allegation of deficient performance by trial counsel.  The Supreme Court has

19

rejected the notion of a "checklist for judicial evaluation ...
[because] [a]ny such set of rules would interfere with the
constitutionally protected independence of counsel and restrict
the wide latitude counsel must have in making tactical
decisions." *Strickland*, 466 U.S. at 689.

When as here a defendant does not ask to participate in the
jury selection process or make any suggestion to strike or
refrain from striking any member of the venire panel, it cannot
be error for defense counsel to competently and diligently make
his peremptory challenges and challenges for cause.  Without any
showing of an error made by defense counsel during the jury
selection process, this Court cannot find deficient performance
or prejudice.  This alleged deficiency fails.

H.  Heal asserts that Donahoe failed to make a Rule 29
motion for judgment of acquittal at the close of the government's
case-in-chief and at the end of trial to preserve a claim of
insufficiency of the evidence for appellate review.  Failure of
counsel to make a meritless motion is not ineffective assistance
of counsel.  *United States v. Moore*, 921 F.2d 207 (9th Cir.

20

1900).  The evidence presented at trial was sufficient to withstand a Rule 29 motion.

The evidence showed that Heal's last reported address was the home where his guns were found in the bedroom closet.  At least one of the guns was loaded with ammunition.  Tr. 78:22-79:9.  His clothes were hanging in the half of the closet where the guns were propped up against the wall in the corner of the closet.  Tr. 76:9-21.  A cardboard box with ammunition for each of the three firearms was on the floor of the closet, sitting on top of a wooden box having the name "William" inscribed upon it.  Letters belonging to him were located in the bedside table on "his" side of the bed.  Tr. 80:6-12.  This residence was his last-reported address according to records of his parole officer.  Tr. 68:2-8.  On Saturday, March 2, 2002, the day of the search, Bankson told parole officer Gordon that Heal had "left the day before in the afternoon for work, and that he probably got drunk and spent the night with his boss because that's what he did.  He hadn't come home that night."  Tr. 173:1-6.

Heal testified that he knew he could not be in possession of

21

firearms.  Heal testified "I was not supposed to possess
firearms."  Tr. 131:13-14.  Heal testified that he had knowledge
that the guns were in his bedroom closet.  Tr. 117:1-4.  Heal
testified that he was sleeping in his camper and drinking in
Butte, Montana, on Sunday morning, March 3, 2002, when he got a
call on his cell phone from a friend who had been listening to a
police radio scanner; this friend warned Heal that the previous
day "my house had been searched, that guns were taken, and my
probation officer wanted me for drinking and possession of guns."
Tr. 133:7-13 (emphasis added).  Heal testified that he skipped
work the next day and fled Montana for Oregon.  Tr. 133:14-15.

Scott Johnson, the last person allegedly to possess Heal's
firearms before they were found in Heal's closet, testified that
he kept the firearms in an unloaded condition because he had
small children in his house.  Tr. 16-19.  Scott Johnson could not
remember exactly when he gave the firearms back to Heal's
girlfriend, although he knew it was in the winter months when he
was re-doing his basement.  Tr. 144:4-12.  One or two of the
firearms found in Heal's closet were loaded with live ammunition,

22

and a third firearm had a loaded clip laying near it.  Tr. 78:22-79:9, 79:24-80:2.

On the day of the search, Heal's girlfriend, Jo Bankson, told ATF Agent Leiser that the guns in the closet were Heal's guns.  Tr. 156:23-25.  That same day, Jo Bankson also told parole officer Cathy Gordon that the guns in the closet were Heal's guns.  Tr. 157:1-3.  Again, on that same day, Jo Bankson told ATF Agent Leiser that she had been in possession of the guns since November 2001.  Tr. 167:12-16.  Three weeks after the search, on March 22, 2002, Jo Bankson confirmed that the guns belonged to Heal.  Tr. 168:9-10.  Even three weeks after the search, Jo Bankson had not yet come up with the story that the guns had been stored at the residence of her co-worker, Scott Johnson.  Tr. 168:11-17.

On rebuttal, parole officer Cathy Gordon testified that on Saturday, March 2, 2002, the day of the search, Jo Bankson said that she received bruises from Heal when he beat her up at the residence on Tuesday, February 26.  Tr. 171:15-20; 172:4-6.  Gordon also testified that Bankson said that Heal was living with

23

her and had merely left for work the day before and not returned
home the night before because he was drinking with his boss.  Tr.
173:1-6.  Furthermore, Cathy Gordon testified that she talked to
Jo Bankson on March 2, March 4, and March 11, and Bankson never
said anything about owning the guns herself until a conversation
on March 22.  Tr. 174:24-175:18.  Like ATF Agent Leiser, parole
officer Gordon testified that she never heard from Bankson that
the guns had been placed with someone named Johnson.  Tr. 175:19-
24.

    Jo Bankson testified that she never loaded the guns.  Tr.
159:2-4.  Jo Bankson further testified that she didn't know how
the guns in her bedroom closet came to be loaded with live
ammunition (and she hadn't even realized that the guns were
loaded).  Tr. 159:5-22.  This testimony allowed the jury to infer
that Scott Johnson had not loaded the guns, that Jo Bankson had
not loaded the guns, but that Heal, who had a box of ammunition
for the guns in his bedroom closet sitting on the wooden box
inscribed with the word "William," had loaded the guns himself.
Thus, the government set out to prove an actual possession of

firearms by Heal, and a reasonable jury could have drawn that conclusion from the evidence presented at trial.

The evidence was sufficient to convict Heal of the charge of felon-in-possession of firearms.  The jury was entitled to disbelieve the testimony of Heal and Bankson.  It is apparent that the jury believed that Heal actually possessed the firearms and that it was he who loaded the firearms with ammunition and placed the firearms on his side of the closet with the rest of his belongings.  The Court did not find the testimony of either Heal or Bankson to be credible, and the jury obviously found facts contrary to those asserted by Heal but supported by the evidence.  A Rule 29 motion for insufficiency of the evidence would have been without merit, and defense counsel cannot be faulted for having failed to make such a motion.

I.  Donahoe offered into evidence a document that was prejudicial to Heal's interests (Def.'s Exhibit B).  Donahoe testified that he offered Exhibit B into evidence, knowing that it contained some damaging information regarding Defendant's prior felony conviction, because the exhibit contradicted parole

officer Cathy Gordon on an important point.  Hrng. Tr. 32:18-34:2.  Donahoe testified that he made a split-second trial decision to allow in the damaging information because, generally, most of the damaging information was in evidence already, and the specific benefit of contradicting Cathy Gordon was needed to bolster the testimony of Jo Bankson.  Hrng. Tr. 34:3-18.

Independent of Exhibit B, the jury already knew that Heal was a convicted felon with a bad drinking problem and a violent nature.  Heal himself testified that he had a "bad drinking problem".  Tr. 112:25-113:1.  Heal testified that he was a convicted felon and had served one year in a pre-release, and that after he was paroled, he was convicted of DUI, causing his parole to be revoked.  Tr. 109:20-22; 113:23-114:3.  Heal testified that after his parole was revoked he was sent to state prison.  Tr. 114:4-9.  Heal testified that before he left his girlfriend's house he had a physical confrontation with her that left bruises on her.  Tr. 136:8-11.  Heal testified that he was "drunk" at the time of this physical confrontation.  Tr. 137:21-22.

Thus, nothing in Exhibit B was going to surprise the jury with new information about Heal.  The description of Heal's prior felony conviction (involving a previous bout of drinking and violence toward a different girlfriend) did not provide the jury with any new information about Heal that they had not already heard from Heal's own testimony.  Defense counsel made a strategic decision to allow in information about Heal's prior conviction in order to try to show the jury that Bankson was a credible witness and parole officer Cathy Gordon was not entirely accurate in her testimony.[2]  Such a trial strategy should be given wide latitude as being within a range of performance of competent defense counsel.  *See Strickland v. Washington*, 466 U.S. at 673.  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional

_____

[2]  On rebuttal, Gordon testified that Bankson never told her that she had told Heal to get out of the house.  Tr. 172:22-173:1-6.  Exhibit B showed that Gordon wrote a report in March, 2002, in which Gordon writes that Bankson states that "when [Heal] did drink, he was told not to come home, and in fact, had stayed out of the home because of drinking."  Tr. 179:21-23.  Thus, defense counsel was trying to show that not all of Cathy Gordon's testimony was completely accurate.

assistance ... [and] the defendant must overcome the presumption that ... the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

This claim of deficiency is without merit.

J.  Donahoe failed to object to jury instructions for failing to give a "theory of the defense" instruction to the jury.  Heal claims that Donahoe should have submitted a "mere proximity" jury instruction as part of his "theory of the defense."  The Court notes that the government put on and proved an "actual possession" case, but Heal attempted to defend the case by showing that he was not in constructive possession of the firearms but only in mere proximity to them.

This Court does give proposed "theory of defense" instructions when they are supported by the evidence and the law of the case.  However, if the Court's own instructions fairly and adequately cover the proposed instruction, a theory of the defense instruction need not be given.  *See United States v. Garcia-Cruz*, 978 F.2d 537, 540 (9th Cir. 1992).

In this case, the Court gave the following jury instruction

on the definition of possession:

> As to possession, a person has possession if that person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it.

Tr. 212:4-8.  This is the 2003 Model Criminal Jury Instruction for the Ninth Circuit on the definition of possession, and it is currently in use today.  *See* 9TH CIR. CRIM. JURY INSTR. 3.18 (2003).  The commentary to this pattern instruction states that "[t]his instruction is all-inclusive.  There is no need to attempt to distinguish further between actual and constructive possession and sole and joint possession."  *See Id.* (comment).  The Court believes that the jury instruction given fairly and accurately covered Heal's theory of defense and allowed Heal to argue his "mere proximity" defense to the jury.  Following *United States v. Moore*, 921 F.2d 207 (9th Cir. 1900) (failure to file meritless motions not ineffective assistance), Donahoe's failure to propose this instruction was not ineffective assistance of counsel.

    III.  <u>Ground Three.</u>  Ineffective assistance of counsel at

29

sentencing:

A.  Donahoe failed to object to the number of DUI convictions in the PSR that were used against him at sentencing. Donahoe's failure to object to the number of DUI convictions in the PSR was neither deficient performance nor prejudicial to the Defendant.  *See* Order dated October 5, 2005, at 10-13 (Docket #60).  The PSR indicated that Defendant had four convictions for DUI-for which he was given only one criminal history point because of the age of three of the DUIs-and possibly three or more DUI convictions for which the state had destroyed the records because more than ten years had elapsed.  *See* PSR ¶¶ 55-58.  The description of four valid DUI convictions in the PSR is correct.  The PSR also correctly notes that Heal may have had an additional three DUI convictions for which records had been destroyed by the courts due to records retention policies within the state court system.

As I stated in my Order dated October 5, 2005, the only relevance that any of Heal's DUIs had at the time of sentencing was to explain why I did not grant Heal's request for a downward

departure from the guideline range.  Only one DUI was even scored in Heal's criminal history score (with only 1 point, about which point Heal does not complain), so the DUIs had a neglible impact, if any, on actual sentence imposed.

As I stated in my October 5, 2005 Order, I would have imposed exactly the same sentence on the basis of just the four DUI convictions that are described in the PSR at paragraphs 42-44 and 47.  At the time of sentencing, I was trying to impress upon Heal that drunken driving is a serious offense and poses a serious danger to the public; I understood that the three DUIs for which no documentation was available could have no effect on Heal's sentence, and they did not, but I was trying to impress Heal that a man with what appeared to be <u>seven</u> DUIs has a serious drinking and driving problem.  I could have made the same point with the four DUIs for which documentation was available.

This alleged deficiency fails to support a claim of ineffective assistance of counsel.

B.  Donahoe failed to investigate the status of an outstanding warrant for misdemeanor battery in the State of

Florida that was relied on at sentencing.  Heal's sentence was not based in any way upon the dismissed misdemeanor battery charge.  *See* Order dated October 5, 2005, at 13-18.  I only discussed the misdemeanor battery charge at the time of sentencing when I denied Heal's request for downward departure. Heal has never denied this offense conduct, which was serious and violent, and Heal only discovered post-sentencing that this misdemeanor charge had been dismissed six weeks prior to sentencing.  Heal now claims that it was ineffective assistance for Donahoe not to have discovered that the charge had been dismissed just prior to sentencing.

     This charge was not scored in Heal's criminal history, and it is only mentioned in the PSR as background criminal history. *See* PSR ¶¶ 52-53.  This charge was mentioned at the time of sentencing as one of several reasons why the Court declined to downwardly depart from Heal's guideline range.  Even had the probation office known that this misdemeanor charge had been dismissed, the charge would still have appeared in the PSR as a prior arrest, and likely Heal would have still admitted that the

offense conduct had occurred.  Heal has failed to show either deficient performance or prejudice resulting from this alleged error of defense counsel.

C.  Donahoe failed to object to special conditions of supervised release that were imposed without advance notice to counsel or defendant and without explanation of why the conditions were imposed.  There is no notice requirement for an imposed condition of supervised release when the condition is listed within the U.S. Sentencing Guidelines as a mandatory or discretionary condition of supervision.  *United States v. Lopez*, 258 F.3d 1053, 1056 (9th Cir. 2001); *see also United States v. Wise*, 391 F.3d 1027, 1033 (9th Cir. 2004) (holding defendant entitled to notice when condition not listed in Guidelines).  Furthermore, a district court is not generally required "to articulate on the record at sentencing the reasons for imposing each [supervised release] condition." *United States v. Rearden*, 349 F.3d 608 (9th Cir. 2003).

The conditions imposed in the Court's written judgment are as follows, and Heal had notice of each condition by virtue of

33

its listing in the U.S. Sentencing Guidelines, as noted after

each condition:

1.   The Defendant shall participate in and complete a
     program of substance abuse testing and treatment as
     approved by the U.S. Probation Office until released
     from the program by the probation officer.  The
     Defendant may be required to pay all or part of the
     cost of that program, as directed by the probation
     officer.  *See* U.S.S.G. §5D1.3(d)(4).

2.   The Defendant shall not possess or ingest alcohol and
     shall not enter any establishment where alcohol is sold
     on a retail basis for consumption on the premises.  *See*
     U.S.S.G. §5D1.3(c)(7)-(8).

3.   The Defendant shall complete 200 hours of community
     service work, at a rate of not less than 10 hours per
     month as directed by the probation office.  *See*
     U.S.S.G. §5D1.3(e)(3).

4.   The Defendant shall submit his person, residence, place
     of employment or vehicle to a search conducted by the
     United States Probation Office.  *See* U.S.S.G.
     §5D1.3(c)(10).

5.   The Defendant shall provide the U.S. Probation Office
     with any requested financial information and shall
     incur no new lines of credit without the prior approval
     of the U.S. Probation Office.  *See* U.S.S.G.
     §5D1.3(d)(2)-(3).

[6.] The Defendant shall pay his child support obligations
     as directed by the United States Probation Office.  *See*
     U.S.S.G. §5D1.3(c)(4).

34

Judgment dated March 19, 2004 (Docket #36), at 3.  In addition, each condition satisfies the requirements of 18 U.S.C. § 3853(d) because each condition is reasonably related either to the nature and circumstances of Heal's offense or his history and characteristics, and to the need to deter further crimes by Heal and to protect the public.  Heal therefore fails to show that his counsel was deficient in failing to object to these conditions or that any prejudice accrued to him thereby.

IV.  <u>Ground Four.</u>  Violation of Fifth Amendment right to fundamentally fair trial when Court failed to give *sua sponte* any additional jury instruction on "What does it mean to be in control of firearms relating to probation or parole?"

The Court has adequately covered Ground Four with the preceding discussion in section II(J) regarding the "theory of defense" instruction.  Heal fails to show any deficient performance that would support a claim of ineffective assistance of counsel.

V.  <u>Ground Five.</u>  "District Court violated defendant's Fifth Amendment Due Process right to a fair trial when it failed to

instruct the jury what constitutes Constructive Possession and that neither proximity to contraband, presence on the property contraband is located, nor association with the person having actual possession is sufficient to establish Constructive Possession."  2255 Motion at 7.

The Court has adequately covered Ground Five with the preceding discussion in section II(J) regarding the "theory of defense" instruction.  In addition, the Court notes that the government presented and proved an "actual possession" case, not a "constructive possession case."

VI.  <u>Ground Six.</u>  "Defendants Due Process Rights were violated by being convicted on evidence that was Constitutionally insufficient to reasonably support a finding of all the essential elements of the crime beyond a reasonable doubt by a properly instructed jury."  Heal appears to be overly focused on the fact that his fingerprints were not on the weapons yet he was still convicted on circumstantial evidence.  This argument fails because "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."  *United States v.*

*Jackson*, 72 F.3d 1370, 1381 (9ᵗʰ Cir. 1995).

Also, this claim of insufficient evidence fails because it could have been raised upon direct appeal but was not; such a claim cannot be advanced on collateral attack without a showing of cause excusing the procedural default and actual prejudice. *See United States v. Ratigan*, 351 F.3d 957, 962 (9ᵗʰ Cir. 2003), *cert. denied*, 125 S.Ct. 173 (2004).

VII.  <u>Ground Seven.</u>  "Defendants Constitutional Rights to Due Process were violated by the District Court when it relied on false and inaccurate information at sentencing."

The Court has adequately covered Ground Seven within the preceding discussion in section III(A)-(B).  Additionally, the Court notes that Ground Seven has been procedurally defaulted.

Ground Seven fails.

VIII.  <u>Ground Eight and Addendum Ground.</u>  "District Court violated defendants Fifth Amendment rights to due process by failing to give any presentence notice to the defendant before it sua sponte imposed special conditions of supervised release at sentencing."  "Delegation of judicial authority to probation

officer to determine drug treatment and testing."

The Court has adequately covered Ground Eight within the preceding discussion in section III(c).  Additionally, the Court notes that this argument has been procedurally defaulted.

As to the Addendum Ground of delegation of judicial authority to probation officer to determine drug treatment and testing, this Ground fails because the Court did not delegate the authority to the probation officer to decide whether Heal should undergo substance abuse treatment.  The Court decided that Heal shall undergo substance abuse treatment as a condition of his supervised release ("shall participate and complete a program of substance abuse testing and treatment").  *See* Judgment & Commitment, dated March 19, 2004, at 3 (Docket #36).  The Court merely delegated to the probation officer the choice of facility providing the substance abuse treatment, and this comports with the law in the Ninth Circuit.  *See United States v. Stephens*, 424 F.3d 876, 884 (9th Cir. 2005), *reh'g and reh'g en banc denied*, 439 F.3d 1083 (9th Cir. 2006) ("it [is] not improper ... for the court to permit the probation officer to select the program and

38

to allow the drug treatment professionals to determine the 'particularities of [the] treatment.'")  Additionally, the Court notes that this argument has been procedurally defaulted.

IX.  <u>Conclusion.</u>

The Court concludes that Heal has failed to establish ineffective assistance of counsel to support the relief he seeks. Because he has failed to make a substantial showing of a denial of a constitutional right, a certificate of appealability will be denied.

Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion to Supplement Original 2255 Motion (Docket #66) is GRANTED.

IT IS HEREBY ORDERED that Defendant Heal's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By a Person In Federal Custody is DENIED, and the civil file (CV 06-02-H-CCL) should be closed.

IT IS FURTHER ORDERED that the following motions are also DENIED:

1.  Defendant's Motion to Disqualify Judge Lovell

39

(Docket #65) is denied as it is based solely on the rulings and decisions of the undersigned senior district judge in the underlying criminal case;

2.   Defendant's Motion for Continued In Forma Pauperis Status (Docket #68) is granted, but the Motion for Continued Appointment of Counsel (Docket #68) is denied because Defendant is not currently represented by counsel and because Defendant is articulate and quite capable of appealing this decision without the assistance of counsel;

3.   Defendant's Motion to Compel An Action on Previous Filed Petitions and/or Set a Specific Time for Motions to Be Heard and Adjudicated and/or Reassignment of Case to Another District Court Judge to Adjudicate (filed on June 15, 2006, Docket #67) is now moot.

IT IS FURTHER ORDERED that, there being no substantial showing of a denial of a constitutional right, 28 U.S.C. § 2253(c)(2), issuance of a certificate of appealability is DENIED.

The Clerk is directed forthwith to notify the parties of entry of this order.

Done and dated this 18th day of July, 2006.


_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE